# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

ARC Venture Holding, Inc., et al.,

Debtors,[1]    Case No. 08-46367

(Jointly Administered)

Maria Romano and United States Rent-a Car, Inc.,

        Plaintiffs,    Adv, No.: 09-4_____

vs.

Brian Leonard, as Trustee for the Bankruptcy Estates of
Nugget Leasing, Inc. and Southwest-Tex Leasing, Inc.,

        Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

    Maria Romano and United States Rent-A-Car, Inc. ("USRAC") for their Complaint against Brian Leonard, as Trustee for the Bankruptcy Estates of Nugget Leasing, Inc. ("Nugget") and Southwest-Tex Leasing, Inc. ("Southwest") state and allege as follows:

1.    Maria Romano is a resident of the State of Nevada and President of USRAC.

2.    USRAC is a Nevada corporation.

---

[1] Jointly administered estates of the following Debtors: ARC Venture Holding, Inc., Case No. BKY 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. BKY 08-46368; Advantage Rent-A-Car, Inc., Case No. BKY 08-46369; Coast Leasing Corp., Case No. BKY 08-46370; Floral Leasing Corp., Case No. BKY 08-46371; Iliad Leasing Corp., Case No. BKY 08-46372; Miso Leasing Corp., Case No. BKY 08-46373; Nugget Leasing Corp., Case No. BKY 08-46374; Okra Leasing Corp., Case No. BKY 08-46375; Rainier Leasing Corp., Case No. BKY 08-46376; San Antonio Rental & Leasing Co., Inc., Case No. BKY 08-46377; Steamboat Springs Rental & Leasing Co., Inc., Case No. BKY 08-46379; Sun Leasing Corporation, Case No. BKY 08-46380; Tradewinds U-Drive, Inc., Case No. BKY 08-46383; Ute Leasing Corporation, Case No. BKY 08-46384.

3. Brian Leonard is the Chapter 7 Trustee for the Bankruptcy Estates of Nugget and Southwest.

4. The Court has jurisdiction over this adversary proceeding pursuant to Sections 157 and 1334 of Title 28 of the United States Code and Bankruptcy Rule 7001.

5. Venue of this adversary proceeding is appropriate in this Court pursuant to Section 1409 of Title 28.

6. This adversary proceeding arises under Bankruptcy Rule 7001 as the Plaintiffs seek declaratory relief regarding the validity of an option agreement, in which the Trustee claims an ownership interest, to purchase stock in USRAC as well as the validity of Nugget's alleged ownership of 49% of the issued stock of USRAC. This is a core proceeding pursuant to Section 157 of Title 28 of the United States Code. This Complaint is filed under Bankruptcy Rule 7001.

7. On or about May 31, 2006, USRAC and Ms. Romano entered into a series of agreements with Nugget, Southwest and Denny Hecker.

8. Nugget and Southwest were alter egos of each other, and of Mr. Hecker. The Trustee has essentially admitted this allegation in his complaint against certain entities owned by Mr. Hecker in adversary proceeding 09-4132 (the "Trustee's Complaint"). The Trustee alleges a massive conspiracy and commingling of funds among Mr. Hecker and his entities, including Southwest and Nugget.

9. The agreements entered into between USRAC and Ms. Romano, on the one hand, and Nugget, Southwest and Denny Hecker, on the other hand, include the following:

    A. Stock Purchase Agreement whereby Nugget purchased 49% of the outstanding stock in USRAC ("Stock Purchase Agreement").

B. Option Agreement to purchase remaining 51% of stock in USRAC. This agreement was between Ms. Romano and Denny Hecker, and Mr. Hecker assigned his interest to Nugget ("Option Agreement"). A requirement under the Option Agreement was that Mr. Hecker was to serve as an officer (Chairman) of USRAC. As such, at all relevant times Mr. Hecker and his alter-ego entities had a fiduciary duty to USRAC

C. Service Agreement between USRAC and Ms. Romano ("Service Agreement").

D. Management Services Agreement between Southwest and USRAC ("Management Service Agreement"). Under the Management Services Agreement, Southwest was to provide the following services:

a. Human resources
b. Internal audit, including compliance reviews
c. Accounting support and training
d. Finance, insurance and service contract administration and coordination
e. Workers compensation
f. Risk management, including general liability, vehicle liability, and property and casualty insurance
g. Employee benefits
h. Facilities construction and management
i. Financing
j. **Cash management and treasury functions**
k. Fleet management and procurement
l. Reservations
m. Sales and service training and support
n. Advertising and marketing procurement, coordination and support
o. Computers hardware, software and interfaces
p. Legal and audit
q. Financial reporting and operational review
r. Transportation services
s. Procurement of material fixed assets and equipment

10. Also on May 31, 2006, Ms. Romano, USRAC, Nugget and Southwest signed a document stating that the Stock Purchase Agreement was released but would be entered into at a later date upon obtaining approval of USRAC's landlord for the sale of the 49% interest in stock.

3

See Exhibit A. Under Exhibit A, the parties released all other agreements, including the Option Agreement, Service Agreement and Management Services Agreement. Id.

11. Despite the release of the Management Services Agreement, Southwest commenced to undertake the duties listed in Paragraph 9(d), above. Unfortunately, as part of its "cash management and treasury functions" services, Southwest managed to convert in excess of $1,500,000 that was to be paid over to USRAC. This was accomplished by Southwest obtaining USRAC's paid accounts receivable and retaining the funds for its own benefit, rather than paying them over to USRAC.

12. Upon information and belief, and as provided in the Trustee's Complaint, Mr. Hecker caused USRAC's money to be funneled through Southwest to his other entities. The funds were trust funds and Southwest never had the right or title to these funds.

13. This conversion of USRAC's funds has wreaked havoc on the company. Its lenders, for example, have frozen credit because of the untenable stockholder relationship.

14. In addition, Hecker caused Nevada State Bank to provide USRAC with a $2,000,000 loan that Maria Romano personally guaranteed along with Hecker. Approximately $396,000 of this loan was converted by Hecker and transferred to Rosedale leasing (one of the defendants in the Trustee's Complaint. At the time of the filing of these bankruptcy cases, the liability to Nevada State Bank was $1,800,000. Hecker was to maintain a $4,000,000 million dollar account balance as security to the bank, but managed to remove that collateral sometime prior to the filing of these cases.

15. Hecker and his entity Rosedale leasing failed to make payments to their lender after having received vehicle lease payments from Romano and USRAC. This failure to make lease payments resulted in Hecker's lender, Chrysler Financial, repossessing over 300 vehicles

4

before Romano and USRAC could take steps to curb the repossessions. Although USRAC continues to operate with Chrysler Financial vehicles, and makes payments directly to Chrysler, other credit lines have been frozen which in turn has reduced the rental inventory for USRAC, resulting in a decline in cash flow for the company. Without the relief from this credit issue, USRAC will not be in position to rotate or seasonally increase its rental fleet, further damaging cash flow.

16. Hecker, Nugget and Southwest never intended to honor their agreements with USRAC and Ms. Romano. At the time they entered into these agreements, they intended to use USRAC's business simply as a source of funds for their other companies. Ms. Romano and USRAC reasonably relied on the representations contained the agreements as demonstrated by allowing Southwest access to their corporate records, reservations and funds, which Southwest and Hecker used to their advantage, rather than for the benefit of USRAC, much to the detriment of USRAC and Ms. Romano. The representations regarding their intent to properly perform all services under the agreements were clearly material to the transaction. In addition to the fraud, Southwest clearly failed to perform under the Management Services Agreement.

17. Hecker/Nugget failed to perform under the Option Agreement, and have otherwise breached all agreements between the parties. If the Option Agreement is a valid agreement that was not released, Nugget is in default for failing to pay a portion of the option price in a timely fashion.

18. Finally, it is uncertain what benefit could be obtained by the estate in attempting to exercise the Option Agreement and becoming the sole shareholder of USRAC. Currently, the company is struggling financially, due to the actions of Southwest/Nugget/Hecker. Also, USRAC is a certified disadvantaged business enterprise ("DBE") because Ms. Romano is the

5

majority owner. As a DBE, USRAC was able to obtain a lease at the McCarran International Airport and it is very likely USRAC would be in breach of the lease if it suddenly is no longer a DBE. As such, if the Trustee were to attempt to exercise the option, he would likely ruin USRAC as an ongoing concern.

## COUNT I-DECLARATORY RELIEF/RESCISSION

19. Plaintiffs restate the foregoing paragraphs as if fully stated herein.

20. A party in breach of contract cannot seek to enforce such contract. Nugget claims to be the party to the Option Agreement, yet it is in breach of the agreement and participated in the fraud against USRAC and Ms. Romano.

21. Plaintiffs request a declaratory judgment that the Option Agreement is null and void.

## COUNT II-DECLARATORY RELIEF/RESCISSION

22. Plaintiffs restate the foregoing paragraphs as if fully stated herein.

23. Plaintiffs request a declaratory judgment that the Stock Purchase Agreement is null and void due to Nugget/Hecker's failure to perform and fraud.

## COUNT III-DECLARATORY RELIEF

24. Plaintiffs restate the foregoing paragraphs as if fully stated herein.

25. Plaintiffs request the Court enter an order determining the amount of their claim against the estate.

## COUNT IV-DECLARATORY RELIEF/CONSTRUCTIVE TRUST

26. Plaintiffs restate the foregoing paragraphs as if fully stated herein.

27. Plaintiffs request the Court enter a declaratory judgment that all funds transferred by Southwest, Hecker and Nugget to their other entities, and proceeds therefrom, that arose from

121240958v1  895579  69515

USRAC's operations are not property of the bankruptcy estate and are to be held in trust for the benefit of USRAC and Ms. Romano.

WHEREFORE, Plaintiffs request the Court enter an Order:

1. Declaring the Option Agreement null and void;

2. Declaring the Stock Purchase Agreement null and void;

3. Declaring that USRAC and Ms. Romano's claim against the estate is in an amount in excess of $1,500,000;

4. Establishing a trust for the benefit of USRAC and Ms. Romano of all funds transferred by Southwest, Hecker and Nugget to their other entities, and proceeds therefrom, that arose from USRAC's operations; and

5. For other such relief the Court finds just and equitable.

Dated: July 13, 2009.                     HINSHAW & CULBERTSON LLP


                                          /e/ Jamie R. Pierce
                                          Thomas G. Wallrich, #213354
                                          Jamie R. Pierce, #305054
                                          333 South Seventh Street, Suite 2000
                                          Minneapolis, MN 55402
                                          Telephone: 612-333-3434
                                          Facsimile: 612-334-8888

                                          ATTORNEYS FOR USRAC

121240958v1 895579 69515