# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:

ARC Venture Holding, Inc., et al.,

Debtors.[1]

BKY Case No.: 08-46367

Chapter 7
(Jointly Administered)

---

## NOTICE OF MOTION AND MOTION FOR ORDER
## APPROVING SALE OF SHARES AND OPTION RIGHTS

Brian F. Leonard, the Chapter 7 Trustee in this case, hereby serves and files this Motion, and states as follows:

1.     A hearing on this Motion will be held on the 16th day of September, 2009 at 1:00 o'clock p.m. before Chief Judge Nancy C. Dreher in Courtroom 7 West, U. S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55402. Any response to this Motion must be filed and served by delivery no later than September 11, 2009, which is three (3) days before the above date (excluding Saturdays, Sundays and holidays), or be filed and served by mail not later than September 7, 2009, which is seven (7) days before the date set for the hearing (excluding Saturdays, Sundays and holidays) in accordance with Local Rules.   **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY SERVED AND FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

2.     This Motion is brought under Section 363 of the U.S. Bankruptcy Code, and Rule 2002(a)(2) of the Rules of Bankruptcy Procedure.   This Court has jurisdiction of this matter

---

[1] Jointly administered estates of the following Debtors:   ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

under 28 U.S.C. Sections 157 and 1334. This matter is a core proceeding. The Petitions commencing the Debtors cases under Chapter 11 were filed on December 8, 2008 and January 24, 2009. All of the Debtors cases were converted to Chapter 7 cases on June 3, 2009. The cases are now pending before this Court.

## BACKGROUND

3.       In 2006, Debtor Nugget Leasing Corporation ("Nugget") purchased 49% of the outstanding shares of United States Rent-A-Car ("USRAC") (the "Shares") a Nevada corporation, which operates a retail motor vehicle rental business having its primary operations at McCarran International Airport in Las Vegas, Nevada. Nugget is also an assignee of an Option Agreement giving it a right to purchase the remaining 51% of the Shares of USRAC for an exercise price of $800,000.00, payable in four (4) yearly installments owed on the 30th days of May, 2007 through 2010 (the "Option Rights"). The Debtors did pay two such installments prepetition, and $400,000.00 thereof remains unpaid. USRAC has filed Adversary Proceeding No. 09-04152 claiming, among other things, that the Option Agreement is unenforceable.

4.       USRAC normally maintains a rental fleet of approximately 950 motor vehicles. Approximately 400 of said vehicles were financed under leases with Chrysler Financial Corporation ("CFC"). Those leases have, or will, expire during the summer and fall of 2009, and CFC requires that all such vehicles be returned. CFC is not willing to extend further leasing rights or privileges to USRAC with respect to such vehicles. USRAC requires approximately 900-950 vehicles in order to profitably. As a result of the return of the CFC vehicles, USRAC must obtain financing to replace the CFC vehicles. USRAC believes it will require fleet financing in the approximate amount of $12 million to replace the CFC vehicles, without which USRAC cannot continue to operate its business. USRAC maintains that it operates at the

McCarran International Airport as a certified disadvantaged business enterprise ("DBE"), which requires that Romano remain ownership of a majority interest in USRAC's shares. The prospective sources of USRAC's new financing have stated that they will require all shareholders to personally guaranty any financing provided. USRAC maintains that it has debts in excess of $10.5 Million, and its assets have a realizable value of less than $8.5 Million.

5.     The Trustee's counsel and Romano's counsel have negotiated the terms of the transaction contemplated herein over the course of about six weeks.

6.     The Trustee has caused a Notice of Sale to be sent to the Clerk of Bankruptcy Court for service upon all creditors and interested parties, a copy of which is attached hereto as Exhibit A, and service of said Notice is reflected at Docket No. 847 in this case.

<strong><u>RELIEF REQUESTED</u></strong>

7.     The Trustee moves the Court for an Order authorizing and approving the Agreement for Sale of Stock and Settlement of Claims (the "Sale Agreement") a copy of which is attached hereto, as Exhibit B, authorizing the sale of the Shares and the Option Rights free and clear of any liens and interests, to Maria Romano ("Romano") for $300,000.00 in cash.

8.     The Trustee is unaware of any liens or interests in the Shares or the Option Rights.

<strong><u>THE SALE AGREEMENT</u></strong>

9.     The Trustee and his counsel, and counsel to USRAC, have negotiated the terms of the Sale Agreement over the course of several weeks. The Sale Agreement is proposed as an arms-length transaction, and the Trustee has no business or other relationship with Romano, USRAC, or any affiliates thereof, other than in his capacity as Trustee of the bankruptcy estates of these jointly administered cases.

10.     The Sale Agreement provides that USRAC and Romano will release and waive any claims against these bankruptcy estates.  USRAC maintains that it is owed approximately $1.5 million by these bankruptcy estates.

11.     USRAC and Romano maintain that they have contacted various prospective sources of financing to replace the CFC returned vehicles, and that each of these sources of financing require that any significant shareholder must be a guarantor of any such financing.  In addition, USRAC and Romano maintain that the By-Laws of USRAC, adopted on or about October 3, 1992, require that any shareholder owning or controlling 4.5% or more of the stock of USRAC is required to execute a personal guaranty to secure rental fleet financing.  Attached as Exhibit C is a Declaration of Maria Romano.

12.     In the event that an objection to this sale is filed and served by a party wishing to submit a competing bid for the purchase of the Shares and the Option Rights, any such party is hereby on notice of all of foregoing matters and is advised to contact counsel for Romano and USRAC for further information with respect thereto.

13.     The undersigned Trustee has communicated with Hertz Corporation, Chrysler Financial Corporation, and with various lenders in the automotive finance industry, to obtain information which bears on the value of the assets proposed to be sold hereunder.

<u>**NEED FOR PROMPT SALE**</u>

14.     USRAC and Romano maintain that a prompt and expeditious purchase of the Shares and Options Rights is necessary, in order to give USRAC time to arrange financing to acquire replacement vehicles for the returned CFC vehicles.  USRAC and Romano maintain that the passage of time without a full replacement fleet may irreparably damage USRAC, because it cannot operate profitably without a full fleet of approximately 950 rental vehicles.

15.     In the event any competing bid is submitted, the undersigned will require such competing bidder to immediately deposit, in collected funds, with the Trustee, the full amount of such competing bid, and the undersigned will conduct an auction prior to the date of the hearing on this Motion so that the Court may enter a final Order on the hearing date with respect to the sale of the Shares and the Option Rights.

16.     At any hearing on this Motion, the undersigned and/or Maria Romano may testify and provide evidence.

17.     This Motion is  based on the exibits hereto, the accompanying Memorandum, and on all the files and proceedings in this case.

**WHEREFORE**, the Trustee respectfully requests that the Court grant the following relief:

1.      Grant the Trustee's Motion and enter an Order substantially in the form attached hereto;

2.      Authorizing the Trustee  to sell the Shares and the Option Rights under the Sale Agreement, free and clear of any liens and interests, and to do all things necessary and appropriate to consummate the Sale Agreement; and

3.      For such other and further relief as is just and equitable.


Dated: August 19, 2009              **LEONARD, O'BRIEN**
                                    **SPENCER, GALE & SAYRE, LTD.**


                          By ____/e/ Andrea M. Hauser_____
                                    Andrea M. Hauser, #207469
                                    Brian F. Leonard, #62236
                                    100 South Fifth Street, Suite 2500
                                    Minneapolis, MN  55402
                                    (612) 332-1030

## **VERIFICATION**

I, Brian F. Leonard, declare under penalty of perjury, that the information contained in the foregoing Motion is true and correct to the best of my information and knowledge.


Dated: August 25, 2009                    /e/ Brian F. Leonard_____

407634

MN - 204
(Rev'd 10/00)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                          BKY Case No.:  08-46367

ARC Venture Holding, Inc., et al.,                                            Chapter 7
                                                             (Jointly Administered)

Debtors.1

## NOTICE TO ALL CREDITORS OF SALE AND NOTICE OF HEARING
## AND MOTION FOR APPROVAL OF SALE

On September 16, 2009, at 1:00 o'clock p.m., a hearing as described below will be held on the Motion of the
undersigned Trustee seeking authority to sell property of the estate as follows:

Nugget Leasing Corporation ("Nugget") owns 49% of the outstanding shares of United States Rent-A-
Car (USRAC), purchased by Nugget on May 31, 2006, and an option to purchase the remaining shares
of USRAC under an Option Agreement on which a remaining exercise price of $400,000.00 is unpaid.
USRAC operates a retail automobile rental leasing business having it primary operations at McCarran
International Airport in Las Vegas, Nevada with a normalized rental fleet of about 950 vehicles. The
Debtors' various filings value its interest in USRAC at $700 thousand to $2.5 million. A hearing will be
held before Chief Judge Nancy C. Dreher on the 16th day of September, 2009 at 1:00 o'clock p. m. on the
Trustee's Motion seeking authority to sell all of Nugget's shares and the rights under the Option
Agreement to Maria Romano, who is the owner of 51% of USRAC's shares.  USRAC has commenced
an adversary proceeding against the Trustee disputing the enforceability of the Option Agreement, and
claims that the Debtors owe it approximately $1.5 million.  USRAC maintains that about 400 of its
rental fleet vehicles must be returned within a few weeks to Chrysler Financial Corporation.  USRAC
maintains that it needs new financing of approximately $12 million to acquire replacement vehicles,
without which USRAC could not operate profitably and would close its operations.   The majority
shareholder will be required to pledge personal assets to obtain said financing.  USRAC maintains that it
is insolvent, having debts in excess of $10,270,000.00 and realizable assets of less than $8.5 million,
and projects an operating loss for 2009.  USRAC maintains that it is a "disadvantaged business
enterprise" which Marie Romano's continued ownership of the majority interest is a prerequisite to

---

1 Jointly administered estates of the following Debtors:  ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex
Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing
Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso
Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375;
Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat
Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-
Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-
40394.



EXHIBIT

A

USRAC's ability to operate at its present location.  The undersigned intends to sell all of his right, title and interest in the Shares and Option Agreement to Maria Romano for the sum of $300,000.00 in cash and a waiver by USRAC and Romano of any claims against these bankruptcy estates.   A formal motion containing additional information and a copy of the sale agreement will be filed in this matter, and any interested party may obtain the same by requesting a copy thereof from the undersigned in writing or by email.

**OBJECTION: MOTION: HEARING.**  Under applicable rules, any objection must be in writing, be delivered to the Trustee and the United States Trustee, and be filed with the clerk, not later than 3 business days before  the time and date of the  above hearing date if by  delivery, or 7 business days before the time and date of the above hearing  if by mail.  IF NO OBJECTIONS ARE SERVED AND FILED, THE COURT MAY GRANT THE RELIEF REQUESTED WITHOUT A HEARING.

| Clerk of Court | United States Trustee | Trustee |
|---|---|---|
| 301 U.S. Courthouse | 1015 U.S. Courthouse | (see address below) |
| 300 South Fourth Street | 300 South Fourth Street | |
| Minneapolis, MN 55415 | Minneapolis, MN 55415 | |

Dated:  August 20, 2009

/e/  Brian F. Leonard, Trustee
Brian F. Leonard, Trustee
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030
bleonard@losgs.com

407585

# AGREEMENT FOR SALE OF STOCK AND SETTLEMENT OF CLAIMS

This Agreement for Sale of Stock and Settlement of Claims ("Agreement") is entered into this 20th day of August, 2009, by and between Maria Romano ("Romano"), United States Rent-A-Car, Inc. ("USRAC"), and Brian F. Leonard ("Trustee"), in his capacity as trustee for the bankruptcy estates of Nugget Leasing Corp. ("Nugget") and the related debtors identified in the Recitals.

## RECITALS

WHEREAS, by voluntary petitions dated December 8, 2008, the following companies commenced the bankruptcy cases bearing the case numbers indicated before the United States Bankruptcy Court for the District of Minnesota (the "Bankruptcy Court"): Southwest-Tex Leasing Co., Inc., Case No. 08-46368; Texas ARC, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46374; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46373; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co, Inc., Case No. 08-46377; Steamboat Springs Rental & Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383; Ute Leasing Corporation, Case No. 08-46384 (all of the foregoing will be referred to as the "Affiliated Debtors") (the bankruptcy estates of the Affiliated Debtors will be referred to as the "Bankruptcy Estates");

WHEREAS, USRAC is in the automobile rental business, with its primary operations conducted at McCarran International Airport in Las Vegas, Nevada;

WHEREAS, Affiliated Debtors are owned, directly or indirectly, and, at least prior to December 8, 2008, were under the control of, Dennis E. Hecker ("Hecker");

WHEREAS, under the terms of that certain Stock Purchase Agreement dated May 31, 2006, Nugget purchased shares representing 49% of the outstanding common stock of USRAC (the shares transferred to Nugget will be referred to as the "Shares");

WHEREAS, in addition to the Shares, Nugget is also the holder of an option to purchase the remaining 51% of the outstanding USRAC common stock under the terms of that certain Option Agreement dated May 31, 2006 (the "Option Agreement"), although the enforceability of the Option Agreement has been disputed by USRAC and Romano in an adversary currently pending before the Bankruptcy Court;

WHEREAS, Romano and USRAC represent and warrant that (a) USRAC has liabilities in excess of $10,270,000, while, after subtracting pre-petition amounts owed by the Affiliated Debtors, the book value of assets is less than $8,500,000, and (b) it projects an operating loss for 2009, and that the financial statements provided to the Trustee are true and correct;

WHEREAS, USRAC claims that:

1.     It is owed in excess of $1,500,000 by the Affiliated Debtors, and that Hecker misrepresented his ability to provide financial stability to USRAC;

121243264v5 895579 69515



2.   It has lost a substantial portion of its rental inventory, and its fleet is no longer large enough to sustain operations;

3.   No traditional source of the sort of financing necessary to restoring fleet levels will provide such financing so long as the Bankruptcy Estate remains the holder of the Shares;

4.   Without immediate access to financing, it will not be able to fund ongoing operations and will most likely cease operations;

5.   Its operations at McCarran International Airport are essential to its viability and depend on its status as a certified disadvantaged business enterprise ("DBE"), a status that USRAC maintains is dependant on Romano's ownership of a majority interest in USRAC's stock;

6.   It is essential that the Shares be sold to Romano and rights under the Option Agreement terminated as quickly as is practicable, in order to enable USRAC to seek access to approximately $12,000,000 of new financing to replace about 400 vehicles that are being returned to Chrysler Financial Corporation ("CFC"); and

7.   Maria and Frank Romano will pledge personal assets to future lenders in order to obtain the financing necessary to replace that portion of its fleet being returned to CFC; and

**WHEREAS,** the parties have engaged in extensive negotiations since early July, 2009, and have reached agreement on the terms under which the respective interests will be best protected;

**NOW THEREFORE,** in consideration of the foregoing and of all the mutual covenants, and in reliance on the representations and warranties contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## 1. PURCHASE AND SALE OF COMMON STOCK

Subject to the terms and conditions of this Agreement, and in reliance upon the representations, warranties, and covenants set forth herein, Romano will purchase the Shares from Trustee, and Trustee will sell, transfer, and convey the Shares and all rights under the Option Agreement to Romano.

## 2. MUTUAL RELEASES

**2.1 General Releases.** Except for obligations arising under this Agreement, the parties, each on behalf of themselves, their shareholders, agents, subsidiaries, affiliates, predecessors, successors, representatives, officers, directors, employees, and assigns, do hereby fully release and forever discharge the other, along with its shareholders, agents, subsidiaries, affiliates, predecessors, successors, representatives, officers, directors, employees, and assigns, from any and all claims, demands, and causes of action, whether known or unknown, arising out of contracts entered into or any other events that occurred

2

prior to the date of this Agreement. Without limiting the generality of the foregoing, the parties acknowledge and agree that, for purposes of this Section 2, Trustee is acting on behalf of all of the Bankruptcy Estates, and the release provided for herein constitutes a release of all claims that could be asserted by any of the Bankruptcy Estates against USRAC or the Romanos, and any claim that USRAC or the Romanos could assert against any of the Bankruptcy Estates.

**2.2 No Admission.** Is it understood and agreed by the parties that the disputes and claims being settled under this agreement have involved substantial litigation time and expense, and that it is in the best interest of all parties to consensually resolve such disputes. Nothing in this Agreement is an admission of liability, and may not be construed as such for any purpose whatsoever.

## 3. BANKRUPTCY COURT APPROVAL

**3.1 Necessity of Approval.** Except to the extent it explicitly provides otherwise, this Agreement is subject to approval by the Bankruptcy Court, and will become binding and enforceable against Trustee only upon entry of an order approving the terms hereof (the "Approval Order"), but is binding on and enforceable against USRAC and Romano unless the Approval Order is not entered by September 16, 2009.

**3.2 Form of Approval Order.** In addition to other terms generally included in orders of its type, the parties will request that the Approval Order contain findings that:

(a) Romano is a "good faith Purchaser" within the meaning of Section 363(m) of the Bankruptcy Code and is thereby entitled to the protection afforded a good faith, arms' length purchaser;

(b) the consideration provided by Romano is fair and reasonable;

(c) this Agreement was negotiated at arms' length;

(d) other than in his capacity as trustee of the Bankruptcy Estates, Trustee does not have any interest in USRAC, and is not in any other way affiliated with the Romanos; and

(e) the sale of the Shares has been negotiated in a "non-collusive manner" within the meaning of Section 363(n) of the Bankruptcy Code.

**3.2 Obligations Prior to Approval.** Notwithstanding the foregoing, prior to and without the need for Bankruptcy Court approval, the parties agree to cooperate and work in good faith to prepare such motion papers and pleadings, and to take such other actions as are reasonably necessary to, seeking such approval. Without limiting the generality of the foregoing, the parties agree to provide such declarations, verified financial statements, and other documents as are reasonably appropriate to evaluation of this Agreement.

121243264v5 895579 69515

**3.3 Deadline for Approval.** It is a condition precedent to the parties obligations under this Agreement that the Bankruptcy Court enters an order approving the terms hereof by no later than September 16, 2009.

# 4. PURCHASE PRICE AND TERMS.

**4.1 Payment of Purchase Price.** Not later than two days after the date of this Agreement, Romano will deliver collected funds in the amount of Three Hundred Thousand and No/100 Dollars ($300,000.00) (the "Purchase Price") to USRAC's counsel of record in the Nugget bankruptcy proceedings, and such funds shall be held in counsel's trust account until paid to the Trustee in accordance with this Agreement.

**4.2 Limited Rights to Proceeds in Event of Subsequent Sale.** In the event that, within eighteen (18) months of the date of this Agreement, there is an agreement for the sale of any shares of USRAC or for the sale of substantially all of USRAC's assets, and such sale would result in a distribution to shareholders in an aggregate amount in excess of $612,245.00, then Romano and USRAC will deliver to Trustee an amount equal to the portion of the sale proceeds that would be distributed on account of the 49% interest represented by the Shares, less the sum of $300,000.00.

# 5. CLOSING

**5.1 Time and Place of Closing.** Subject to the conditions contained herein, the closing of the transactions to be effected hereunder (the "Closing") shall be held at USRAC's offices on or prior to September 17, 2009, or at such other time and place or on such other date as shall be mutually agreed upon by the parties (the "Closing Date").

**5.2 Trustee's Deliveries at Closing.** At Closing, Trustee will deliver:

(a) to the extent the same are available and in the possession of the Trustee, such certificates, endorsements, stock transfer powers, and other documents reasonably necessary to effectuate the transfer of the Shares, free and clear of all liens, security interests, claims, charges, and encumbrances of any nature whatsoever;

(b) a certified copy of the Approval Order approving this Agreement which authorizes executed releases evidencing the Bankruptcy Estates' release of all claims that have been or could be asserted against USRAC and the Romanos as of the Closing Date; and

(c) such other instruments or documents as USRAC and the Romanos may reasonably request to fully effect the transfer of the Shares and to otherwise evidence and effectuate the purposes of this Agreement, as authorized by the Approval Order.

4

121243264v5 895579 69515

**5.3 USRAC's Deliveries at Closing.** At Closing, USRAC will deliver:

(a) an executed release evidencing the release of all claims that have been or could be asserted against any one or more of the Bankruptcy Estates as of the Closing Date and the Trustee; and

(b) such other instruments or documents as Trustee may reasonably request to fully effect the transfer of the Shares and to otherwise evidence and effectuate the purposes of this Agreement, as authorized by the Approval Order.

**5.4 Romano's Deliveries at Closing.** At Closing, Romano will deliver:

(a) the Purchase Price, which will be delivered from counsel's trust account;

(b) executed releases evidencing: (i) her release of all claims that have been or could be asserted against any one or more of the Bankruptcy Estates as of the Closing Date; and (ii) Frank Romano's release of all claims that have been or could be asserted against any one or more of the Bankruptcy Estates as of the Closing Date; and

(c) such other instruments or documents as Trustee may reasonably request to fully effect the transfer of the Shares and to otherwise evidence and effectuate the purposes of this Agreement, as authorized by the Approval Order.

**5.5 Dismissal of Adversary Proceeding.** Within two days after the Closing Date, Romano and USRAC will cause a notice of dismissal to be filed in the pending adversary captioned *Maria Romano and United States Rent-a Car, Inc. v. Brian Leonard, as Trustee for the Bankruptcy Estates of Nugget Leasing, Inc. and Southwest-Tex Leasing, Inc.*; Adv. No. 09-4152.

# 6. GENERAL PROVISIONS

**6.1 Expenses, Taxes, Etc.** Whether or not the transactions contemplated by this Agreement are consummated, the parties will bear their own respective expenses and costs associated with the matters described herein, including the fees of their respective counsel and accountants.

**6.2 Survival of Representations and Warranties.** Each party hereto covenants and agrees that the representations, warranties, covenants, and agreements set forth in this Agreement and otherwise arising as a matter of law will survive the Closing.

**6.3 Specific Performance.** The parties to this Agreement acknowledge that (a) Trustee's obligation to sell, and Romano's obligation to buy, the Shares, and (b) certain other obligations under this Agreement, are unique, and that any party will have no adequate remedy at law if any other party fails to perform any of its respective obligations hereunder. If any party should default in the performance of its obligations hereunder, any adversely affected party may, in addition to pursuing any other of its legal

5

rights and remedies, sue in equity for specific performance, and the parties hereto expressly waive the defense that a remedy in damages will adequate.

**6.4  Waivers.**  No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, may be deemed to constitute a waiver by the party taking such action or compliance with any representation, warranty, covenant, or agreement contained herein.  The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

**6.5  Binding Effect; Benefits.**  This Agreement will inure to the benefit of and be binding on the parties hereto and their respective heirs, successors, and assigns.  Except as otherwise set forth herein, nothing in this Agreement, expressed or implied, is intended to confer on any person other that the parties hereto or their respective heirs, successors, and assigns any rights, remedies, or obligations.

**6.6  Notices.**  All notices, requests, demands, and other communications related to this Agreement are to be addressed as provided below, and will be deemed to have been duly given when delivered in person or transmitted by facsimile transmission, or upon receipt after dispatch by certified or registered first class mail, postage prepaid, return receipt requested, to the party to whom the same is so given or made;

    If to Trustee:

        Leonard, O'Brien, Spencer, Gale & Sayre
        Attn. Brian Leonard
        100 South 5th Street, Suite 2500
        Minneapolis, MN  55402
        Fax: 612-332-2740

    If to USRAC and the Romanos:

        United States Rent A Car, Inc.
        Attn. Maria Romano
        4744 Paradise Road
        Las Vegas, NV 89169
        Fax:  702-739-0427

        with a copy to:

        Maria Romano
        3955 Royal Viking Way
        Las Vegas, NV 89121

        with copy to:

        Hinshaw & Culbertson LLP
        Attn. Thomas G. Wallrich
        333 South Seventh Street, Suite 2000
        Minneapolis, MN 55402
        Facsimile:  612-334-8888

121243264v5 895579 69515

Any party may amend the foregoing information by delivery of such amendment to the other parties in the manner provided for above.

**6.7    Entire Agreement.**    This Agreement supersedes all prior agreements and understandings, whether oral or written, between the parties hereto with respect to the subject matter hereof and cannot be changed or terminated orally, and this Agreement constitutes the entire agreement of the parties as to the matters set forth herein and therein.

**6.8  Headings.**  The article and section and other headings contained in this Agreement are for reference purposes only and may not be deemed to be a part of this Agreement or to affect the meaning or interpretation of this Agreement.

**6.9  Counterparts.**  This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original, and all of which together will be deemed to be one and the same instrument.

**6.10  Severability.**  If any term, covenant, condition, or provision of this Agreement or the application thereof to any circumstance should be invalid or unenforceable to any extent, the remaining terms, covenants, conditions, and provisions will remain valid and enforceable to the fullest extent permitted by law.  If any provision of this Agreement is so broad as to be unenforceable, such provision is to be interpreted to be only as broad as is enforceable.

**6.11   Amendments.**  This Agreement may not be modified or changed except by an instrument or instruments in writing signed by the party against whom such modification or change is charged.

**6.12  Assignment.**  No party may assign any rights or obligations under this Agreement without the prior written consent of the other parties hereto.

**6.13  Incorporation of Recitals.**  The parties agree that the recitals at the start of this Agreement are true and correct statements of fact to the best of the knowledge, information, and belief.

**6.14   Effect of Non-approval.**  Notwithstanding anything to the contrary herein, the parties understand and agree that approval of this Agreement and the transactions contemplated herein is subject to approval of the Bankruptcy Court, and the Bankruptcy Court may refuse to approve this Agreement.  The parties agree that in such event, no party to this Agreement shall have any liability to any other party based on any alleged breach of this Agreement.  If the Bankruptcy Court does not enter the Approval Order by the deadline established in Section 3.3 and such deadline is not extended by agreement of the parties, then and in that event Romano shall be entitled to a return of the Purchase Price, and the parties will be entitled to pursue all claims that would otherwise have been released pursuant to Section 2.1.

[Signature page to follow]

7

121243264v5 895579 69515

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

**United States Rent-A-Car, Inc., a Nevada corporation**

By: _____
     Maria Romano
     Its President

**Maria Romano, an individual resident of Nevada**

_____
Maria Romano

**Brian Leonard, in his capacity as Trustee of the Affiliated Debtors**

_____
Brian Leonard

8

121243264v5 895579 69515

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re ARC Venture Holding, Inc., et al.,                    Case No. 08-46367

     Debtors,[1]                                              (Jointly Administered)

---

## DECLARATION OF MARIA ROMANO

---

Maria Romano ("Romano") makes this Unsworn Declaration in support of the Trustee's Motion for Sale of Shares and Option Rights (the "Motion").

1.    I am the president of United States Rent-A-Car, Inc. ("USRAC"), and also the owner of 51% of USRAC's outstanding stock.

2.    USRAC is a Nevada corporation whose business consists of operating an automobile rental business at McCarran International Airport in Las Vegas, Nevada.

3.    On or about May 31, 2006, when I was the sole shareholder of USRAC, I entered into that certain Stock Purchase Agreement, under which Nugget Leasing Corp. ("Nugget") purchased 49% of the outstanding common stock.

4.    On or about May 31, 2006, I also entered into that certain Option Agreement, under which Dennis E. Hecker ("Hecker") was granted the option to purchase my remaining

---

[1] Jointly administered estates of the following Debtors: ARC Venture Holding, Inc., Case No. BKY 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. BKY 08-46368; Advantage Rent-A-Car, Inc., Case No. BKY 08-46369; Coast Leasing Corp., Case No. BKY 08-46370; Floral Leasing Corp., Case No. BKY 08-46371; Iliad Leasing Corp., Case No. BKY 08-46372; Miso Leasing Corp., Case No. BKY 08-46373; Nugget Leasing Corp., Case No. BKY 08-46374; Okra Leasing Corp., Case No. BKY 08-46375; Rainier Leasing Corp., Case No. BKY 08-46376; San Antonio Rental & Leasing Co., Inc., Case No. BKY 08-46377; Steamboat Springs Rental & Leasing Co., Inc., Case No. BKY 08-46379; Sun Leasing Corporation, Case No. BKY 08-46380; Tradewinds U-Drive, Inc., Case No. BKY 08-46383; Ute Leasing Corporation, Case No. BKY 08-46384.



**EXHIBIT**

C

121243374v2 895579 69515

51% interest in USRAC stock. (The Stock Purchase Agreement, the Option Agreement, and related agreements will be referred to as the "May 31, 2006 Transactions").

5. The decision to enter into the May 31, 2006 Transactions primarily grew out of capital requirements related to an expansion of USRAC operations. USRAC had successfully bid for a location at McCarran International Airport, and was going to have to incur substantial build-out and other expenses associated with the move.

6. The May 31, 2006 Transactions were further supposed to ensure USRAC's access to vehicle inventory on favorable financing terms through the Hecker network, a factor that was especially significant in light of the significantly increased inventory requirements that would come along with the airport operations. In addition to the value of the personal guaranties that Hecker would execute, USRAC would benefit by reason of the per-unit discounts associated with the large volume of vehicles purchased by the Hecker entities as a whole.

7. USRAC never realized the projected benefits of the May 31, 2006 Transactions, and is in fact in substantially worse financial condition than it was before May 31, 2006.

8. Rather than receiving the benefit of favorable sale terms available under an agreement with Chrysler Financing, USRAC was required to pay the full manufacturer's suggested retail price, and never received any part of between seven and eight million dollars in aggregate rebates earned upon purchases that Hecker caused USRAC to undertake.

9. Because the rebates paid on account of USRAC-financed vehicles were never paid to or for the benefit of USRAC, the net effect of the transactions was that USRAC was obligated to make payments on an inflated indebtedness. Over the course of two years, debt service payments on account of this excessive debt was not less than $3.4 million greater than it should have been.

121243374v2 895579 69515

10.     As a result of the actions of Hecker and entities under his control, USRAC is in danger of becoming insolvent, and my husband and I have been forced to personally incur indebtedness so that we could loan USRAC the funds necessary to maintain operations. In December, 2008 alone, we loaned USRAC $250,000, and the balance owing from USRAC to us as of the end of June, 2009 was over $650,000.00.

11.     In response to the financial pressures arising out of Hecker and his related entities' collapse, I have also had to defer substantial salary amounts to which I am entitled under an employment contract entered into on May 31, 2006.

12.     As part of the May 31, 2006 Transactions, USRAC contracted to have Southwest-Tex Leasing Co., Inc. d/b/a Advantage ("Southwest-Tex"), one of the Affiliated Debtors, provide reservation management services. Southwest-Tex failed to remit revenues earned by USRAC in accordance with the parties' agreement, and USRAC has a claim in the approximate amount of $1.3 million by reason of such defaults.

13.     In all, over the past two years, Hecker-controlled entities collected and wrongfully withheld in excess of $1.8 million that was owing to USRAC.

14.     USRAC is indebted to Nevada State Bank for over $1.2 million that was borrowed for the purpose of completing improvements to facilities at the Airport. Hecker personally guarantied this indebtedness, and further agreed to pledge cash collateral in an amount sufficient to satisfy the indebtedness.

15.     All of the Nevada State Bank indebtedness as was to be paid by Hecker personally as a capital contribution Hecker, however, failed to make such payment, and also breached his agreement to regarding the collateralization of his guaranty, so that USRAC is liable for the full indebtedness, as am I as a personal guarantor.

3

16.     After the improvements were completed, USRAC was reimbursed $400,000.00 for the Airport's contribution to the tenant improvements. Hecker caused USRAC to transfer all such funds received to Rosedale Dodge, Inc., d/b/a/ Rosedale Leasing Co. without consideration provided to USRAC.

17.     USRAC, like substantially all similarly situated businesses, depends on financing to maintain an adequate inventory of rental vehicles. Such financing is invariably conditioned upon shareholders' personal guaranties of the debt, and USRAC's bylaws require any shareholder owning more than 4.5% of the outstanding stock to execute such personal guaranties.

18.     Since 49% of USRAC's shares became property of a bankruptcy estate, it has been impossible to find financing, and USRAC has been unable to replace the rental vehicles that have had to be returned since December, 2008.

19.     Ideally, USRAC maintains a fleet of not less than 950 rental vehicles, and with fewer than 700, it becomes impossible to generate revenues that are sufficient to fund day-to-day operations.

20.     As of the end of July, 2009, USRAC's fleet consisted of 800 vehicles, 400 of which are to be returned to Chrysler Finance within 30 to 60 days.

21.     Prospective lenders have tentatively agreed to provide financing on the condition that: (i) my husband and I pledge personal assets as collateral; and (ii) I acquire Nugget's interest in the company.

22.     Because I have personally guarantied substantially all of USRAC's indebtedness, I agreed to pay $300,000.00 to resolve all of Nugget's claims and interests in USRAC despite my

121243374v2 895579 69515

belief that those claims and interests are worth less than $300,000.00 to any third party.  My

conclusion is based in part on the following considerations:

  a.  USRAC has liabilities in excess of $10,270,000, while, after subtracting pre-petition amounts owed by the Affiliated Debtors (the collection of which appears to be highly doubtful), the book value of assets is less than $8,500,000.

  b.  USRAC projects an operating loss for 2009 as a whole, and will only be able to return to profitability if it is able to purchase or lease not less than 400 replacement vehicles within the next two months.  Under present conditions and without financial accommodations, there would be no return on an investment in USRAC.

  c.  The acquisition of vehicles depends on the sufficiency of shareholder guaranties, and USRAC's bylaws require any shareholder holding over 4.5% of the outstanding stock to guaranty fleet related indebtedness.  A third-party purchaser, therefore, would be contractually obligated to personally guaranty approximately $18 million of corporate debt at a time of negative cash flow.

  23.  The Trustee's interests and contractual rights with respect to USRAC stock are not

marketable, and the terms of the Settlement Agreement are the most favorable that the

bankruptcy estate can reasonably expect.  This opinion is based on the following factors:

  a.  Any third party purchaser of USRAC stock would be required to personally guaranty corporate indebtedness related to fleet financing. Assuming we are able to restore vehicle inventory to optimum level, the amount of indebtedness that would be subject to the personal guaranty requirement would be approximately $25 million.

  b.  Given the company's recent difficulties and the resulting increased indebtedness owing from USRAC to my husband and me, and the projected losses for 2009, it is probable that all revenues in excess of non-insider debt service and ordinary operating expenses over the next three years will be used to repay shareholder debt.  It is therefore unlikely that there will be sufficient income to declare dividends for at least three years.

  c.  USRAC depends on operations conducted at McCarran International Airport, and the lease agreement for the space there provides that it "is contingent upon certification … as a Disadvantaged Business Enterprise," which status depends on my ownership of a majority of the outstanding stock.

121243374v2 895579 69515

24.     USRAC's business also depends on continued access to a GDS-based reservation system. All potential lenders and reservation purveyors have made it a condition of providing such access that Nugget's interests in the company be terminated and I become the sole shareholder.

25.     Because of the risks described above and the uncertainty regarding return on investment, I believe it is highly unlikely that any sophisticated purchaser would invest as much as $300,000 for a 49% interest in USRAC. I am not aware of any purchasers who would be able to purchase the stock in the time available before the company's lack of financing becomes critical.

26.     If the Trustee were to attempt to sell the stock to a third party who was unacceptable to me or lenders, there would be significant risk that USRAC would be forced to liquidate, and would thereby suffer damages caused by such sale.

27.     The damages incurred by reason of the sale would include, among other items: (i) a projected deficiency in fleet-related financing of between $1.2 million and $1.6 million; (ii) damages in an amount to be determined arising out of the default on three leases of real property; and (iii) indemnification claims held by guarantors.

28.     In total, I would estimate the total damages arising out of USRAC's forced liquidation would reach approximately $12 to 14 million, and I understand that some or all such damages may be entitled to treatment as post-petition claims against the bankruptcy estates.

29.     Depending on the projected pool of unsecured claims allowed in the Nugget bankruptcy case, it would appear likely that the estate would not realize any benefit by reason of even a significantly higher sale price paid by a third party because it would not have the benefit of the release of USRAC's claim. Any hypothetical marginal benefit that might be realized

6

121243374v2 895579 69515

through a sale to a third party would be more than offset by USRAC's share of any distribution from the estate.

30.    Subject to reasonable assurances that such information will be treated as confidential, USRAC is willing to share financial and other information supporting the foregoing allegations.  Requests for such information should be sent via e-mail and U.S. Mail to:

> United States Rent-A-Car, Inc.
> c/o Hinshaw & Culbertson LLP
> Attn. Joel D. Nesset
> 333 South Seventh Street, Suite 2000
> Minneapolis, MN 55402
> E-mail: jnesset@hinshawlaw.com

I declare the foregoing to be true to the best of my knowledge, information, and belief.

Dated: August 24, 2009

Maria Romano

7

121243374v2 895579 69515

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          BKY Case No.:  08-46367

ARC Venture Holding, Inc., et al.,                                        Chapter 7
                                                              (Jointly Administered)

                    Debtors.[1]

_____

## MEMORANDUM OF LAW IN SUPPORT OF TRUSTEE'S MOTION
## FOR APPROVAL OF SALE OF SHARES AND OPTION RIGHTS

### FACTS

   The facts supporting the relief requested are set forth in the verified Motion.

### ARGUMENT

### THE PROPOSED SALE SATISFIES THE BUSINESS JUDGMENT TEST, IS IN THE BEST INTERESTS OF THE BANKRUPTCY ESTATES AND SHOULD BE APPROVED.

   Section 363 of the Bankruptcy Code governs a Trustee's ability to sell property of the

estate outside of the ordinary course of business.  11 U.S.C. § 363(b)(1).  Although this section

does not set forth a standard for determining when it is appropriate to authorize such a sale,

courts have uniformly held that such a sale should be approved when it is justified by a sound

business purpose.  See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986);

Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 567 n.16

---

[1] Jointly administered estates of the following Debtors:  ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

(8th Cir. 1997); <u>Stephens Industries, Inc. v. McClung</u>, 789 F.2d 386 (6th Cir. 1986); <u>In re Schipper</u>, 933 F.2d 513, 515 (7th Cir. 1991); <u>In re Continental Air Lines, Inc.</u>, 780 F.2d 1223 (5th Cir. 1986); <u>In re Lionel Corp.</u>, 722 F.2d 1063 (2d Cir. 1983); <u>In re Crystal in LLC</u>, 293 B.R. 455, 463-64 (B.A.P. 8th Cir. 2003); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169 (D. Del. 1991). The burden of establishing a rational business justification is on the debtor. <u>Lionel</u>, 722 F.2d at 1070-71. However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. <u>See, e.g.</u>, <u>Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.</u> (<u>In re Integrated Resources, Inc.</u>), 147 B.R. 650, 656 (S.D.N.Y. 1992), <u>appeal dismissed</u>, 3 F.3d 49 (2d Cir. 1993).

Applying § 363, courts accord debtors substantial deference in formulating procedures for selling assets. <u>See, e.g.</u>, <u>Integrated Resources</u>, 147 B.R. at 656-57 (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor-in-possession are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); <u>In re 995 Fifth Ave. Associates, L.P.</u>, 96 B.R. 24, 28 (Bankr. S.D.N.Y.1989) (same). Indeed, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. <u>See, e.g.</u> <u>Integrated Resources</u>, 147 B.R. at 659 (such procedures should "encourage bidding and. . . maximize the value of the Debtor's assets"); <u>In re Financial News Network, Inc.</u>, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets. . . [should] provide an adequate basis for comparison of offers, and . . . provide for a fair and efficient resolution of bankrupt estates").

The Trustee has reviewed the financial statements of United States Rent-A-Car

("USRAC"). The Trustee has spoken with personnel from Chrysler Financial Corporation ("CFC") who verified that USRAC is required to return approximately 400 vehicles to CFC during the late summer and fall of 2009.

The Trustee believes that the financial condition of USRAC is fairly precarious, and that its ability to obtain fresh financing of approximately $12 million is to replace the CFC vehicles is crucial to the continued operations of USRAC. The Trustee also believes that no such financing will be available to USRAC unless, and until, all of the shares of USRAC are held by shareholders who have the legal ability and financial capability of executing a guaranty of any fleet financing loans that USRAC obtains. Such a guaranty is a common requirement of lenders in the industry.

## CONCLUSION

Based on the financial condition of USRAC, and all of the facts stated in the Motion, the exhibits thereto,and herein, the Trustee believes that the proposed sale is in the best interests of this bankruptcy estate and respectfully requests that the Court approve the sale.


Dated: August 19, 2009      **LEONARD, O'BRIEN**
     **SPENCER, GALE & SAYRE, LTD.**


By    /e/ Andrea M. Hauser
     Andrea M. Hauser, #207469
     Brian F. Leonard, #62236
     100 South Fifth Street, Suite 2500
     Minneapolis, MN 55402
     (612) 332-1030

407638

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:                                                              BKY Case No.:  08-46367

ARC Venture Holding, Inc., et al.,                                              Chapter 7
                                                              (Jointly Administered)

                        Debtors.[1]

_____


## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2009, I caused the following documents:

> ***Notice of Motion and Motion for Order Approving Sale of Shares and Option Rights, Memorandum in Support of Motion, and (proposed) Order Approving Sale***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a)


                                              /e/  Luann K. Tims

Dated:  August 25, 2009                       _____
                                              Luann K. Tims
                                              100 South Fifth Street, Suite 2500
                                              Minneapolis, MN  55402
                                              (612) 332-1030


407886

---

[1]  Jointly administered estates of the following Debtors:  ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

_____

In re:                                                                      BKY Case No.:  08-46367

ARC Venture Holding, Inc., et al.,                                                        Chapter 7
                                                                              (Jointly Administered)

                    Debtors.[1]

_____

### ORDER APPROVING SALE OF SHARES AND OPTION RIGHTS IN USRAC

This matter came before the Court on the Motion of Brian F. Leonard, Trustee, to sell

shares and United States Rent-A-Car ("USRAC") and Option Rights to purchase additional

shares, to Maria Romano, free and clear of liens, claims, encumbrances, and interests, under 11

U.S.C. Section 363.

Appearances were by Brian F. Leonard, attorney for the Trustee.  Other appearances were

noted in the record.  Based upon the Trustee's Motion, and all the files and proceedings herein,

the Court's findings of fact, and conclusions of law, if any, having been recorded in open Court

following the close of evidence,

**IT IS HEREBY ORDERED:**

1.      The Trustee's Motion is granted, and the Trustee is authorized to sell the Debtor's

        interest in USRAC, including Shares and Option Rights as described in the

        Motion, to Maria Romano ("Romano"), for $300,000.00 in cash, and the sale

        shall be free and clear of liens, claims, encumbrances, and interests pursuant to 11

---

[1] Jointly administered estates of the following Debtors:  ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

U.S.C. Section 363, is granted.

2.     The sale described in the Trustee's Motion and authorized herein was negotiated, proposed and entered into by the Trustee and Romano without collusion, in good faith, and from an arms length bargaining position.   Neither the Trustee nor Romano have engaged in any conduct that would cause or permit the sale to be avoided under Section 363(n) of the Bankruptcy Code.   Romano is a good faith purchaser under Section 363(m) of the Bankruptcy Code and as such, is entitled to all the protections afforded thereby.   In the absence of a stay pending appeal, Romano will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the sale at any time after the entry of this Order, notwithstanding the provisions of Bankruptcy Rule 6004(g).

3.     The consideration provided by Romano pursuant to the Sale Agreement is fair and reasonable and constitutes the highest and best offer for the Shares and Option Rights being purchased by Romano.

4.     Pursuant to Section 363(f) of the Bankruptcy Code, the Shares and Option Rights are sold to Romano free and clear of any and all liens, claims, encumbrances and interests, if any, and such liens, claims, encumbrances, and interests shall attach to the proceeds of the sale with the same validity, priority and effect, and to the same extent that existed immediately prior to the consummation of such sale, and in all cases subject to any and all rights, claims and defenses that the Trustee may have with respect thereto.

5.     The Trustee is authorized and empowered to execute any document or agreements, and to take such further actions as may be reasonable and necessary

to carry out the terms of the Sale Agreement.

6.      Notwithstanding Federal Rules of Procedure 6004(h), this Order shall take effect immediately upon entry.


Dated: _____          _____
                                           Nancy C. Dreher
                                           Chief Judge


407637