UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

ARC Venture Holding, Inc., et al.,

            Debtors.[1]

Case No. 08-46367

Chapter 7
(Jointly Administered)

---

## MOTION TO ENFORCE ORDER OF THE COURT
## FILED BY BRIAN F. LEONARD, CHAPTER 7 TRUSTEE,
## HYUNDAI CAPITAL AMERICA,
## AND U.S BANK NATIONAL ASSOCIATION

---

TO:    The Debtors and other entities specified in Local Rule 9013-3.

1.    This joint motion is filed by (1) Brian F. Leonard, the Chapter 7 Trustee appointed in these cases ("Trustee"), (2) Hyundai Capital America ("HCA"), and (3) U.S. Bank National Association ("U.S. Bank") (all collectively, the "Movants"). Movants respectfully move the Court for the relief requested below and give notice of hearing.

2.    The Court will hold a hearing on this Motion on May 18, 2010 at 10:30 a.m., before the Honorable Nancy C. Dreher, Chief Judge of the U.S. Bankruptcy Court, in Courtroom No. 7 West, 301 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, 55415.

---

[1]    Jointly administered estates of the following Debtors: ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

3.     Any response to this Motion must be filed and served not later than May 13, 2010, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005, and Local Rule 1070-1.  This proceeding is a core proceeding. This Motion is filed under Fed. R. Bankr. P. 9013, 11 U.S.C. § 105, and 11 U.S.C. § 726(b).

5.     The Debtors filed their Chapter 11 Petition on December 8, 2008.  These cases were converted to Chapter 7 on June 3, 2009 ("Conversion Date").

6.     Movants hereby seek entry of an order directing Livingstone Partners, LLC to disgorge the administrative expense payment it received in the amount of $1,700,000.00 for professional services because the payment violates the payment priority scheme established in these cases.

## FACTS

### A.     The Resolution of the Fleet Lenders' Administrative Claims

7.     HCA is an interested party in the Debtors' cases.  HCA extended loans to Rosedale Dodge Inc. d/b/a Rosedale Leasing ("Rosedale Dodge") on February 4, 2008, and August 11, 2008, in the aggregate original principal amount of $104,785,342.74.  In both instances, Rosedale Dodge used the funds provided by HCA to refinance its purchase of certain vehicles, which Rosedale Dodge was leasing, or would later lease, to Southwest-Tex Leasing Co., Inc., d/b/a Advantage Rent-A-Car.  As security for its loans, Rosedale Dodge granted HCA a first-priority security interest in, among other things, all vehicles purchased with funds extended by HCA under the loans.

8.     U.S. Bank is an interested party in the Debtors' cases.  U.S. Bank made advances to Walden Fleet Services II, Inc. ("Walden"), a non-debtor affiliate of the Debtors, to finance Walden's lease of certain vehicles to Southwest-Tex Leasing Co., Inc., d/b/a Advantage Rent-a-Car.  U.S. Bank has a perfected, first-priority security interest in the leased vehicles and rental payments due under the leases.

9.     HCA and U.S. Bank (for purposes of this Motion, the "Fleet Lenders") held a security interest in, or leased to the Debtors, the Debtors' rental fleet of several thousand vehicles.  During the Debtors' Chapter 11 cases, the Fleet Lenders moved for various forms of relief, including adequate protection payments.  A stipulation providing for certain payments was executed by the Fleet Lenders and the Debtors on or about January 30, 2009, and approved by the Bankruptcy Court on or about February 2, 2009 ("Stipulation").

10.    The Stipulation preserved the Committee's right to object to the Stipulation, and the Committee in fact interposed a formal objection.  The Bankruptcy Court had not ruled on the Committee's objection as of the Conversion Date.   Following his appointment, the Trustee moved the Court for leave to prosecute the Committee's objection, which was granted.

11.    The Trustee and the Fleet Lenders (and GE Leasing) reached an agreement resolving the Fleet Lenders' claims and their rights to the balance of $10 million in sale proceeds placed in escrow for the Fleet Lenders' benefit ("Fleet Lender Settlement").  On November 11, 2009, the Trustee filed a Motion for Order Approving Settlement with Fleet Lenders (Docket No. 899).  That settlement was approved on December 9, 2009 ("Fleet Lender Settlement Order") (Docket No. 918).

12.    Because the escrow funds were insufficient to pay the full amount of the Fleet Lenders' administrative claims, the Fleet Lender Settlement and the Fleet Lender Settlement

Order provided that the Fleet Lenders would have remaining allowed Chapter 11 administrative claims in part as follows: (1) HCA: $6,591,173.73; and (2) U.S. Bank: $2,367,712.84. (Docket Nos. 899, 918).

**B.**     **The Debtors' Bankruptcy Estates Are Administratively Insolvent**

13.     The Debtors' estates are administratively insolvent. The estates presently hold approximately $5.8 million. The estates are not anticipated to have revenues in excess of $12 million.

14.     The estates do not hold sufficient funds to pay the balance of the Fleet Lenders' allowed administrative expense claims and pay other administrative claims in full. The Trustee estimates that unpaid Chapter 11 and Chapter 7 administrative claims exceed $20 million.

**C.**     **The Committee's Retention of Livingstone As Its Investment Banker and the Payment Made to Livingstone**

15.     During the Debtors' Chapter 11 Cases, the Committee filed an application to retain investment banker Livingstone Partners, LLC ("Livingstone") to assist with the sale of the Debtors' assets ("Livingstone Application") (Docket No. 270). In particular, the Committee sought payment to Livingstone of an Accomplishment Fee, which was a contingent fee to be determined based, in part, on the amount by which the sale price exceeded the bid price. For various reasons, the Debtors objected to the Committee's request to employ Livingstone (Docket No. 276).

16.     On March 4, 2009, the Court held a hearing on the Livingstone Application. A transcript for that hearing is contained in Docket No. 825 (the "3/4/09 Trans."). The Debtors argued that the proposed employment would cause delay and expense to the estates. (*See, e.g.,* 3/4/09 Trans. p 14, lines 11-12). In response to the Debtors' concerns about costs, the Court

expressed its understanding that any payment to Livingstone would come out of the unsecured creditors' money:

> The Court: Yeah, but whose money is it?  My understanding is – my understanding from the way this is being presented is that any payment to be made for services to be rendered here are going to be coming out of money that would be unsecured creditors' money.
>
> Is that not right?
>
> Mr. Corey-Edstrom:  Well I would say that the amount of priority claim until you get to the unsecured creditors money is unknown, Your Honor, at this point but certainly it would ultimately come out of the unsecured creditors' pockets just like any payments to anybody above them.
>
> . . . .

(3/4/09 Trans. pp. 14-15).

> The Court:  And so particularly under circumstances where the money they want to spend is their money, why – what is the basis for any objection unless it is related to somehow or another unduly impeding the progress of getting something consummated?

(3/4/09 Trans. pp. 16, lines 8-13).

      17.    In response, the Debtors' counsel argued that it was unclear when the obligation to pay Livingstone would arise under the original application, and the Debtors were already in the process of bringing other buyers to the table.  Later, counsel for Carlton Financial (another fleet lender) argued that Livingstone's retention would cause delay and jeopardize his client's interest.  The Court responded: "So what's wrong with allowing them [the Committee] to maximize the resources to make a fully informed participation in this process if it's not going to erode anybody else's money?"

      18.    Carlton Financial's counsel responded that his client would not object if it was made clear that Livingstone's fee would not be paid from the funds that would be used for the

administrative claims of his client. (3/4/09 Trans. pp. 25-26). The U.S. Trustee's counsel view was that "the unsecured creditors can spend their money how they want to." (3/4/09 Trans. pp. 28, lines 21-23).

19. Ultimately, the Court asked the Committee's counsel if Livingstone was willing to subordinate its right to payment to the administrative claims in the case. (3/4/09 Trans. pp. 29, lines 16-20). The Committee's counsel responded that he would need to check. (3/4/09 Trans. pp. 29, lines 21-22). The Court scheduled an evidentiary hearing on the Livingstone Application, stating:

> I'm inclined to protect the priorities but once we get down to the unsecured general nonpriority claims, if it's their money, they're going to get the benefit of whatever professional help they need to fully participate on the same professional level as anybody else in this case with respect to this process.

(3/4/09 Trans. pp. 30-31).

20. On March 6, 2009, a contested hearing was held on Livingstone's Application. A transcript for that hearing is contained in Docket No. 871 (the "3/6/09 Trans.").

21. At that hearing, counsel to the Committee confirmed that Livingstone agreed to subordinate its Accomplishment Fee to the claims of the Fleet Lenders and to certain other administrative claims:

> Mr. Shannon: What we are asking is that for Livingstone expenses and success fee, if . . . there is a success fee, come right after the secured fleet lenders have been paid in full. . . .
>
> We have agreed to subordinate it even to the secured claims and various other specified administrative claims . . . .
>
> [W]e would respectfully request that the Court grant the application subject to the conditions, the $35,000 cap, the subjects subordinate to the fleet lenders and the other valid secure claims.

> The Court: So as I understand this correctly then . . . that would be that the investment banker would be subordinated to all of the payments except for those listed in [Exhibit 1] Item No. 4?
>
> Mr. Shannon: Correct.

(3/6/09 Trans. p. 7, lines 21-24, p. 8, lines 16-18, and p. 9-10.)

The Court then approved Livingstone's employment, subject to the subordination of Livingstone's right to payment, as well as certain other conditions. A proposed order was to be prepared and submitted after all parties in attendance at the March 4 and March 6, 2009 hearings agreed to its form (3/6/09 Trans. p. 25-26). Subsequently, a proposed order was submitted to the Court, and the Court approved Livingstone's appointment on March 18, 2009 (the "Livingstone Order") (Docket No. 362).

22. The Livingstone Order provided for a contingent fee and payment of expenses to Livingstone. Importantly, the Livingstone Order also established a payment priority scheme to be enforced throughout the case, including after appointment of a Chapter 7 trustee. In pertinent part, the Livingstone Order states:

> 5. The Debtors are authorized to pay 100% of costs and expenses . . . provided, however, that payment of such costs and expenses and the Accomplishment Fee, if any, shall be subordinate to pari passu payment of allowed post-petition professional fees of [certain professionals] . . . , *the Fleet lenders adequate protection liens and all payments due the Fleet lenders* . . ., but will be paid ahead of all other administrative expenses. *The payment priorities set forth herein shall be enforceable throughout the case, including upon a trustee, if any, appointed in the case.*
>
> 6. The Accomplishment Fee is approved under section 328 of the Bankruptcy Code and shall be paid at the closing of a Transaction pursuant to the terms of the Accomplishment Fee payment structure.
>
> 7. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

(emphasis added).

23.     Accordingly, under the Livingstone Order, Livingstone was entitled to payment subject to full payment of the specified professional fees and "*all* payments due the Fleet Lenders." *Id.* (emphasis added).  While the Court authorized payment of the Accomplishment Fee to Livingstone upon the closing of the sale, the Court specifically stated that the payment priorities established by the Order would be enforceable throughout the case (even after appointment of a trustee), and it retained jurisdiction with respect to all matters arising from the Livingstone Order.

24.     The Debtors sold virtually all of their assets to Hertz Corporation on or about April 8, 2009.

25.     After the sale of the Debtors' assets, the Debtors and the Committee disputed the amount of Livingstone's Accomplishment Fee.  Remarkably, Livingstone asserted that it was owed $2,700,000 for its brief engagement.  The Debtors eventually agreed to pay Livingstone $1,700,000.00 (the "Livingstone Settlement," Docket No. 500) and filed a motion seeking approval of the Livingstone Settlement (the "Livingstone Settlement Motion," Docket No. 499). In the Livingstone Settlement Motion, the Debtors did not ask for any change to the payment priority scheme established by the Livingstone Order, nor did they ask the Court to alter any rights of the Fleet Lenders or other administrative claimants which had priority over Livingstone's right to payment.

26.     The Court approved the Livingstone Settlement on May 6, 2009.  The order approving the Livingstone Settlement did not change the payment priority scheme set forth in the Livingstone Order.    Subsequently, Livingstone received payment of $1,700,000 (the "Livingstone Payment").

## REQUEST FOR RELIEF

27.     As is further described in the accompanying memorandum of law, the parties seek enforcement of the Livingstone Order and its payment priority scheme.  Therefore, Livingstone must disgorge the Livingstone Payment and return it to the estates.  Because the estates are administratively insolvent, Livingstone's retention of the Livingstone Payment violates the payment priority scheme established by the Livingstone Order.

28.     This Motion is supported by the Declarations of Sam Frobe and David Kopolow.

WHEREFORE, based on the foregoing, Movants respectfully request that this Court enter an Order:

a.      disgorging the Livingstone Payment and directing Livingstone to repay the Livingstone Payment to the estates within 30 days;

b.      granting such other and further relief as this Court deems just and appropriate under the circumstances.

Dated:  April 1, 2010                    LEONARD, O'BRIEN SPENCER, GALE &
                                         SAYRE, LTD.


                                         By:  /e/ Brian F. Leonard
                                             Andrea M. Hauser, #207469
                                             Brian F. Leonard, #62236
                                         100 South Fifth Street, Suite 2500
                                         Minneapolis, MN 55402
                                         (612) 332-1030
                                         bleonard@losgs.com
                                         ahauser@losgs.com

                                         ATTORNEYS FOR CHAPTER 7 TRUSTEE

Dated: April 1, 2010                     FAFINSKI MARK & JOHNSON, P.A.

                                         By: /e/ Connie A. Lahn
                                             Connie A. Lahn, #0269219
                                             David E. Runck, #0289954
                                         400 Flagship Corporate Center
                                         775 Prairie Center Drive
                                         Eden Prairie, Minnesota 55344
                                         Telephone:    952.995.9500
                                         Facsimile:    952.995.9577
                                         Connie.Lahn@fmjlaw.com
                                         David.Runck@fmjlaw.com

                                         ATTORNEYS FOR
                                         HYUNDAI CAPITAL AMERICA

Dated: April 1, 2010                     DORSEY & WHITNEY LLP

                                         By: /e/ Monica Clark
                                             Thomas O. Kelly (# 189960)
                                             Monica Clark (# 28211X)
                                         50 South Sixth Street, Suite 1500
                                         Minneapolis, MN 55402-1498
                                         Telephone: (612) 340-2600

                                         ATTORNEYS FOR U.S. BANK
                                         NATIONAL ASSOCIATION

## VERIFICATION

I, Brian F. Leonard, one of the movants named in the foregoing Notice of Motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on April 1, 2010.            Signed: _____
                                                   Brian F. Leonard, Trustee

418964

## VERIFICATION

I, Sam Frobe, National Manager, Commercial Credit, of Hyundai Capital America, the movant named in the foregoing Notice of Motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on   3 – 17  , 2010.      Signed: _____

Sam Frobe
National Manager
Commercial Credit
Hyundai Capital America
3161 Michelson Drive, Suite 1900
Irvine, CA 92612

## <u>VERIFICATION</u>

I, David Y. Kopolow, Senior Vice President, Special Assets Group, of U.S. Bank National Association, the movant named in the foregoing Notice of Hearing and Motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on March 29, 2010.                    Signed: _David Y. Kopolow_

David Y. Kopolow
Senior Vice President
Special Assets Group
BC-MN-H22A
U.S. Bancorp Center
800 Nicollet Mall
Minneapolis, MN 55402

In re:

ARC Venture Holding, Inc., et al.,

Debtors.[1]

Case No. 08-46367

Chapter 7
(Jointly Administered)

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO ENFORCE ORDER OF THE COURT
FILED BY BRIAN F. LEONARD, CHAPTER 7 TRUSTEE,
HYUNDAI CAPITAL AMERICA,
AND U.S BANK NATIONAL ASSOCIATION**

This Memorandum of Law is filed by (1) Brian F. Leonard, the Chapter 7 Trustee

appointed in these cases ("Trustee"), (2) Hyundai Capital America ("HCA"), and (3) U.S. Bank

National Association ("U.S. Bank") (all collectively, the "Movants"). Movants request that the

Court enforce the terms of the Livingstone Order and order Livingstone Partners, LLC

("Livingstone") to disgorge the $1.7 million payment it received as an "Accomplishment Fee"

(the "Livingstone Payment") because the estates do not have sufficient funds to comply with the

payment priority scheme established by the Livingstone Order. Specifically, the estates lack

funds to pay the Fleet Lenders' allowed administrative claims in full and the claims of other

professionals—all of which have payment priority over Livingstone. As such, Livingstone's

---

[1] Jointly administered estates of the following Debtors: ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

retention of the Livingstone Payment violates the payment priority scheme established in these cases, and Livingstone should be required to disgorge the Livingstone Payment.

<u>**FACTS**</u>

The facts supporting this Motion are contained in the Motion.  Capitalized terms have the meanings defined in the Motion if not defined herein.

<u>**ARGUMENT**</u>

**I.      The Payment to Livingstone Violates the Payment Priority Scheme and Must Be Disgorged**

As set forth fully in the Motion, the Livingstone Order provided that the Fleet Lenders and others would be paid all amounts due to them before Livingstone is entitled to retain the Livingstone Payment.  Because the Fleet Lenders and other professionals have not been fully paid, the priority scheme set forth in the Livingstone Order will be compromised unless Livingstone is required to return the Livingstone Payment to the estates.

When a Chapter 11 case converts to Chapter 7 and the estate is administratively insolvent, the disgorgement of professional fees is required to enforce the payment priorities set forth in the Bankruptcy Code.  *See, e.g., In re  Matz,* 197 B.R. at 640-41 (Bankr. N.D. Ill. 1996) ("[C]ourts have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding . . . . To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code.") (citations omitted); *In re Lochmiller Industries, Inc.,* 178 B.R. 241, 251 (Bankr. S.D. Cal. 1995) (collecting cases and stating that, in 1995, it could find no case that did not order disgorgement of interim compensation when necessary to achieve *pro rata* distribution among equally situated creditors).

Some courts consider disgorgement to be mandatory. *In re Kingston Turf Farms, Inc.,* 176 B.R. 308, 310 (Bankr. D. R.I. 1995) ("[D]isgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code, i.e., to ensure that all creditors of the same class share [*pro rata*] in the available pool of funds.").

Courts ordering disgorgement of professional fees reason that it is the "fundamental obligation of a Chapter 7 Trustee and the Court to see to distribution of estate assets according to the statutory priorities." *In re Specker Motor Sales, Co*., 393 F.3d 659, 664 (6th Cir. 2004). For example, in *In re Specker Motor Sales, Co*., the court ordered the debtor's counsel to disgorge his retainer after the case converted to Chapter 7, stating that interim compensation must be disgorged when necessary to achieve *pro rata* distribution among creditors.

The rationale and conclusions of the disgorgement cases cited above—which required disgorgement when professionals received more than they were entitled to—apply here. In this case, Livingstone received more than it was entitled to under the Livingstone Order, which established a payment priority scheme to be enforced "throughout the case, including upon a trustee, if any, appointed in the case." Livingstone Order, ¶ 5.[2]

In accepting its engagement, Livingstone voluntarily and knowingly agreed to the payment priority scheme. This agreement is in part noted in the Engagement Agreement between the Committee and Livingstone. (See Engagement Agreement, attached to the Order, at para. 3.) In response to the Court's questions concerning Livingstone's willingness to subordinate its right to payment, Committee's counsel acknowledged Livingstone's agreement to subordinate:

---

[2] The decision of Judge Kressel in an Order entered on May 18, 2006 in the case of *In re Hyman Freightways, Inc.*, 97-45174, is easily distinguishable. In that case, the Trustee and the United States Trustee sought a refund of professional fees under 11 U.S.C. §726, and the Court held that the statute provides no authority for ordering a refund in a motion brought several years after the fee was paid. In contrast, the present motion is timely filed and is based on the express terms of the Livingston Order.

Mr. Shannon:  What we are asking is that for Livingstone expenses and success fee, if . . . there is a success fee, come right after the secured fleet lenders have been paid in full. . . .

We have agreed to subordinate it even to the secured claims and various other specified administrative claims . . . .

[W]e would respectfully request that the Court grant the application subject to the conditions, the $35,000 cap, the subjects subordinate to the fleet lenders and the other valid secure claims.

The Court:  So as I understand this correctly then . . . that would be that the investment banker would be subordinated to all of the payments except for those listed in [Exhibit 1] Item No. 4?

Mr. Shannon:  Correct.

(3/6/09 Trans. p. 7, lines 21-24, p. 8, lines 16-18, and p. 9-10.)

As such, Livingstone knew of and accepted the risk that it might have to disgorge the Livingstone Payment later in the case if the claims of the Fleet Lenders and other professionals described in the Livingstone Order were not fully satisfied.  The timing of the Livingstone Payment does not change the analysis.  The Court and the parties knew that payment of the Accomplishment Fee necessarily would occur before it would be known if sufficient funds were available to pay the claims of the Fleet Lenders and the other professionals.  Therefore, the Livingston Order permitted payment to Livingstone at the time of closing, but also established a payment priority scheme to be enforced where, as here, the cases were converted and the estates were administratively insolvent.

Courts order disgorgement even when the circumstances giving rise to the disgorgement are not attributable to the professional.  For example, the *Specker Motor Sales, Co*. court acknowledged the frustration felt by a professional whose fees were disgorged:

> It is understandable that this conclusion dismays Bays. He ably provided his services, and now, through no fault of his own, is denied all but a sliver of compensation. But his position is no different from that of anyone who provides services or credit to a bankrupt firm. Indeed, as an administrative claimant, his position is better than most. As the district court stated, "counsel is a gambler in [bankruptcy] proceedings like every other administrative creditor."

*Id.*

In addition, disgorgement of the Livingstone Payment is consistent with the Court's understanding about how—and from whom—Livingstone was to be paid. Livingstone was never intended to be paid from funds that should go to pay the Fleet Lenders' claims or the claims of other professionals listed in the Livingstone Order. Rather, as the Court believed and Committee counsel acknowledged, Livingstone was to be paid from the unsecured creditors' money:

> The Court: Yeah, but whose money is it? My understanding is – my understanding from the way this is being presented is that any payment to be made for services to be rendered here are going to be coming out of money that would be unsecured creditors money.
>
> Is that not right?

(3/4/09 Trans. pp. 14-15.)

> The Court: And so particularly under circumstances where the money they want to spend is their money, why – what is the basis for any objection unless it is related to somehow or another unduly impeding the progress of getting something consummated?

(3/4/09 Trans. pp. 16, lines 8-13.)

> I'm inclined to protect the priorities but once we get down to the unsecured general nonpriority claims, if it's their money, they're going to get the benefit of whatever professional help they need to fully participate on the same professional level as anybody else in this case with respect to this process.

(3/4/09 Trans. pp. 30-31.)

Further, disgorgement is not inequitable in this case, given the brief duration of Livingstone's retention and the questionable value of its services. Livingstone's retention was approved on March 18, 2009 and the sale took place three weeks later, on April 8, 2009.

Although Livingstone's retention was approved based in part on its proclaimed ability to bring new buyers to the table, at the time of its retention, both Hertz (the winning bidder) and Enterprise (the stalking horse bidder) already had engaged in discussions with the Debtors regarding the purchase of the Debtors' assets. In its objection to Livingstone's retention, Debtors' counsel noted in particular Hertz' ongoing discussions with the Debtors, and argued that Livingstone should not be entitled to any payment if, for example, Hertz was the successful bidder -- an outcome which in fact occurred when Hertz placed the winning bid.

To date, no evidence has been offered that Livingstone introduced prospective purchasers or otherwise advanced the sale process in a way entitling it to the $1.7 million "accomplishment fee" it ultimately received for its three-week engagement. The absurdity of Livingstone's fee is magnified by the fact that the payment was made by the administratively insolvent debtors.

## CONCLUSION

Livingstone must disgorge the Livingstone Payment and return it to the estates. Because the estates are administratively insolvent, Livingstone's retention of the Livingstone Payment violates the payment priority scheme established by the Livingstone Order.

Dated:  April 1, 2010

**LEONARD, O'BRIEN SPENCER, GALE & SAYRE, LTD.**

By: _/e/  Brian F. Leonard_____
  Andrea M. Hauser, #207469
  Brian F. Leonard, #62236
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
(612) 332-1030
bleonard@losgs.com
ahauser@losgs.com

ATTORNEYS FOR CHAPTER 7 TRUSTEE


Dated:  April 1, 2010

FAFINSKI MARK & JOHNSON, P.A.

By: _/e/ Connie A. Lahn_____
  Connie A. Lahn, #0269219
  David E. Runck, #0289954
400 Flagship Corporate Center
775 Prairie Center Drive
Eden Prairie, Minnesota 55344
Telephone: 952.995.9500
Facsimile: 952.995.9577
Connie.Lahn@fmjlaw.com
David.Runck@fmjlaw.com

ATTORNEYS FOR
HYUNDAI CAPITAL AMERICA


Dated:  April 1, 2010

DORSEY & WHITNEY LLP

By:  _/e/ Monica Clark_____
  Thomas O. Kelly (# 189960)
  Monica Clark (# 28211X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

ATTORNEYS FOR U.S. BANK
NATIONAL ASSOCIATION

418963

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          BKY Case No.:  08-46367

ARC Venture Holding, Inc., et al.,                                         Chapter 7
                                                                (Jointly Administered)

          Debtors.[1]

_____

## UNSWORN CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2010, I caused the following documents:

> ***Motion to Enforce Order of the Court Filed by Brian F. Leonard, Chapter 7 Trustee, Hyundai Capital America, and U.S. Bank National Association, Memorandum of Law in Support of Motion to Enforce Order of the Court Filed by Brian F. Leonard, Chapter 7 Trustee, Hyundai Capital America and Order (proposed)***

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a)

and mailed the same by first-class mail to the following:

Livingstone Partners, LLC
Attn:  Officer/Managing Agent
443 North Clark, Suite 200
Chicago, IL 60654


                               /e/  Stephanie Wood

Dated:  April 6, 2010                         _____
                                             Stephanie Wood
                                             100 South Fifth Street, Suite 2500
                                             Minneapolis, MN  55402
                                             (612) 332-1030

419614

---

[1] Jointly administered estates of the following Debtors:  ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:

ARC Venture Holding, Inc., et al.,

        Debtors.[1]

Case No. 08-46367

Chapter 7
(Jointly Administered)

---

## ORDER

---

The above-entitled matter came on for hearing before the undersigned on the motion of (1) Brian F. Leonard, the Chapter 7 Trustee appointed in these cases ("Trustee"), (2) Hyundai Capital America ("HCA"), and (3) U.S. Bank National Association ("U.S. Bank") (all collectively, the "Movants") to disgorge an administrative expense payment made in these cases to Livingstone Partners, LLC. After reviewing the files and pleadings herein and considering the arguments presented,

IT IS HEREBY ORDERED:

1.      The Motion is granted;

2.      Livingstone Partners, LLC is hereby ordered to disgorge the payment of $1,700,000.00 it received from the Debtors' estates;

---

[1]   Jointly administered estates of the following Debtors: ARC Venture Holding, Inc., Case No. 08-46367; Southwest-Tex Leasing Co., Inc., d/b/a Advantage, Case No. 08-46368; Advantage Rent-A-Car, Inc., Case No. 08-46369; Coast Leasing Corp., Case No. 08-46370; Floral Leasing Corp., Case No. 08-46371; Iliad Leasing Corp., Case No. 08-46372; Miso Leasing Corp., Case No. 08-46373; Nugget Leasing Corp., Case No. 08-46374; Okra Leasing Corp., Case No. 08-46375; Rainier Leasing Corp., Case No. 08-46376; San Antonio Rental & Leasing Co., Inc.; Case No. 08-46377; Steamboat Springs Rental and Leasing Co., Inc., Case No. 08-46379; Sun Leasing Corporation, Case No. 08-46380; Tradewinds U-Drive, Inc., Case No. 08-46383 Ute Leasing Corporation, Case No. 08-46384; Advantage Licensing LLC, Case No. 09-40394.

835549

3.      Livingstone Partners, LLC is hereby ordered to make payment of $1,700,000.00 to the Chapter 7 Trustee within 30 days of the date of this Order.


Dated: _____, 2010

                                        _____
                                        The Honorable Nancy C. Dreher
                                        Chief United States Bankruptcy Judge

418965